FILED

JUL 20 2026

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY ________, DEPUTY

Leonard K. Clingman
keithclingman@gmail.com
646-881-8777
Plaintiff pro se

**UNITED STATE DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

---

Leonard K. Clingman, a natural person,
(Plaintiff),

**COMPLAINT**

v.

Where I'm From Apparel, LLC, an Ohio limited liability company, and

Dick's Sporting Goods Inc, a Delaware limited liability company,
(Defendants).

JURY TRIAL DEMANDED

---

Plaintiff pro se Leonard K.. Clingman ("Plaintiff" or "Mr. Clingman") alleges as follows for his complaint against Where I'm From Apparel, LLC ("WIF") and Dicks Sporting Goods Inc. ("DSG"):

## I. LOCAL CIVIL RULE 3.6 STATEMENT

1. Pursuant to Local Civil Rule 3.6, this is an action to enforce a trademark and that trademark is registered with the United States Patent and Trademark Office, registration number 8319194.

## II. PARTIES

2. Leonard K. Clingman is a natural person residing in Edmond, Oklahoma, at 1125 NW 199th St., Edmond, OK, 73012.

3. Where I'm From Apparel, LLC is an Ohio limited liability company organized and existing under the laws of the state of Ohio with a principal place of business as stated through the Ohio Secretary of State of 4344 Lyman Dr., Hilliard, OH, 43026.

4. Dick's Sporting Goods Inc. is a Delaware limited liability company organized and existing under the laws of the state of Delaware with a principal place of business as stated through the Delaware Division of Corporations of 251 Little Falls Dr., Wilmington, DE, 19808.

## III. JURISDICTION AND VENUE

5. This Court has personal jurisdiction over Defendants WIF and DSG because upon information and belief each conducts a significant amount of business in this district and has sold products, including the ones which are the subject of this complaint, in this district.

6. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 15 U.S.C. 1121 because the claims herein arise under the federal Lanham Act, 15 U.S.C. §§ 1051 *et seq*. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims arise under the same set of facts as the federal law claims and pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000.

7. Venue is proper in this action as, upon information and belief, sales, advertising and purchase of the infringing products occurred primarily within this district.

## IV. GENERAL ALLEGATIONS

8. Plaintiff is an experienced marketer, brand builder and entrepreneur with specific experience with "lifestyle" brands in the sports world, and is also a lifelong fan of the NBA's Oklahoma City Thunder. Inspired by the city of Oklahoma City and the team's 2025 NBA championship, Plaintiff created the brand Champ City which was intended to celebrate the

city of Oklahoma City and the Thunder's recent championship and potential to win many more in the years to come. Plaintiff is a "small business" which has no employees or contractors, does its own design work, product and manufacturer sourcing, website building, order management and sales.

9. On June 24th, 2025, Plaintiff filed an application to trademark "Champ City" under USPTO International Class 025 for "graphic t-shirts" and without claim to any particular font style, size or color (the "Mark"). Plaintiff included in the application that the significance of the Mark was:

> "Champ has significance or is a term of art in the relevant trade of industry or as used in connection with the goods or services listed in the application, as follows: Relates to sports championships; particularly, but not limited to, basketball"
>
> and
>
> "City has significance or is a term of art in the relevant trade of industry or as used in connection with the goods or services listed in the application, as follows: Relates, but is not limited to, the city of Oklahoma City"

10. Plaintiff first used the Mark in commerce on June 27th, 2025. Specifically, Plaintiff created, marketed for sale, and sold the t-shirt in Exhibit A (the "CC Shirt"). That Shirt displays the Mark CHAMP CITY in the team's orange and blue colors on the front chest and inside label of a black t-shirt. Notably, this was just days after the Oklahoma City Thunder won their first NBA championship, which was intentional by Plaintiff.

11. Plaintiff's marketing for the Champ City brand, and CC Shirt, revolved, and revolves, primarily around the team's 2025 NBA championship. This includes primarily using imagery and other references to the team's championship including the team's championship ring, championship banners, photos and speeches from the championship ceremony and references to the month and year that the Thunder won their first NBA championship.

12. On or around June 23rd, 2026, the Mark was placed on the USPTO principal register, securing exclusive rights for Plaintiff to use the mark in commerce on graphic t-shirts, especially those which referenced the team and its NBA championship. Plaintiff, at all times relevant, owned, and currently owns, the Mark and did not at any point give WIF or DSG consent to use the Mark, nor did either attempt to get consent from Plaintiff.

**A. Where I'm From Apparel, LLC**

13. WIF manufactures and sells apparel, primarily graphic t-shirts, that "celebrate[s] where you're from"[1] and allows the wearer to "express that pride through high-quality, story-driven apparel. . .Whether you're repping your city, your college, or your favorite team".[2] WIF sells its products through its own website and four Ohio brick and mortar locations as well as through national retailers such as DSG and Target.[3] WIF licenses many of the products it sells through universities, teams or players. Upon information and belief, WIF's yearly revenue is approximately $6.4 million[4] and it has over 50 employees.[5]

14. Upon information and belief, after June 2025 WIF designed, manufactured, markets, advertised, sold and distributed a black t-shirt which featured a counterfeit version of the CHAMP CITY Mark in the team's colors displayed prominently on top of an image of a championship ring with the words "OKC" and "Oklahoma City" below (the "WIF Shirt"). [see Exhibit B] This shirt clearly references the team's 2025 NBA championship and connects it to the city of Oklahoma City.

15. Plaintiff did not license or authorize in any way WIF to use the CHAMP CITY Mark on the WIF Shirt, or otherwise. The mark used on the WIF Shirt is identical to Plaintiff's registered

---

[1] https://whereimfrom.com/pages/about-us
[2] Id.
[3] https://whereimfrom.com/pages/store-locator
[4] https://www.zoominfo.com/c/where-im-from/375124153
[5] https://www.linkedin.com/company/where-i'm-from-apparel/people/

Mark, is applied on the identical type of goods, namely graphic t-shirts, and is therefore a counterfeit of Plaintiff's CHAMP CITY Mark. Further, the WIF Shirt uses the same colors and references as the CC Shirt sold by Plaintiff.

16. Upon information and belief, WIF markets and sells the WIF Shirt to primarily the same audience Plaintiff is targeting, both in taste and geography, namely Oklahoma City Thunder fans living in the state of Oklahoma.

17. Plaintiff became aware of the WIF Shirt while watching a January 23rd, 2026, Oklahoma City Thunder game on television and seeing a fan in the WIF Shirt. [see Exhibit C] This prompted him to Google search under the phrase "champ city shirt okc thunder". That search brought up in its results, alongside other graphic t-shirts celebrating the Thunder's 2025 NBA championship, an ad featuring an image of the WIF Shirt which led to a landing page to purchase the Shirt at Defendant DSG's website, www.dickssportinggoods.com. [see Exhibit D]

18. Upon information and belief, the WIF Shirt is manufactured by WIF and was sold both by WIF through their website at www.whereimfrom.com and in their retail stores as well as by WIF to third party retailers such as DSG who then sold the WIF Shirt through their websites and retail stores.

19. On February 6th, 2026, Plaintiff sent a cease and desist notice (the "WIF Notice") to WIF via USPS Certified Mail, which also made a settlement demand. Plaintiff also emailed the WIF Notice to info@whereimfrom.com, an active email address that was listed on the WIF website, on February 12th, 2026, and again on February 26th, 2026. WIF has not responded to any of Plaintiff's communications and, upon information and belief, continues to

manufacture and sell the counterfeit WIF Shirt and did not inform 3rd party retailers selling the WIF Shirt of the issue upon receiving Plaintiff's Notice.

**B. Dick's Sporting Goods Inc.**

20. DSG is the largest sporting goods retailer in the U.S. with a yearly revenue of $19.2 billion.[6]

21. Upon information and belief, DSG sold the WIF Shirt through its website, www.dickssportinggoods.com, and in DSG stores between July 2025 and at least April 2026. [see Exhibit E] DSG titles the WIF Shirt "Where I'm From Adult Oklahoma City Thunder NBA Champions T-Shirt" on its website. [Id.] Upon information and belief, the majority of the sales by DSG of the WIF Shirt were to customers in the state of Oklahoma.

22. Plaintiff sent DSG a cease and desist notice (the "DSG Notice") on February 12th, 2026, which also made a settlement demand. Plaintiff received a response from Bazsi Takacs, Senior In-House Counsel for DSG, on February 24th, 2026, stating that DSG would investigate the matter. On March 3rd, 2026, Mr. Takacs emailed Plaintiff, stating;

> "After investigating your allegations, we advise that you direct your accusations to the manufacturer of the accused products, <u>Where I'm From</u>. We do not adjudicate trademark disputes.
>
> Accordingly, we consider this matter resolved."

Plaintiff responded on March 18th, 2026, stating;

> "I am aware that the infringing product is manufactured and distributed by Where I'm From Apparel. However, this does not absolve DSG of liability as your response implies. As I'm sure you're aware, liability for trademark infringement is not limited to manufacturers. A retailer that sells infringing goods is also directly liable for the selling of counterfeit and infringing goods."

DSG did not respond. Despite knowledge that they were selling a product with a counterfeit mark, DSG continued, and upon information and belief continues, to advertise and sell the WIF Shirt.

---

[6] https://www.zoominfo.com/top-lists/top-retail-sports-companies-in-US

## V. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## TRADEMARK INFRINGEMENT AND COUNTERFEITING IN VIOLATION OF THE LANHAM ACT §§ 1114 & 1116

23. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs above as though fully set forth herein.

24. Plaintiff is the creator and owner of the CHAMP CITY Mark, which is on the primary U.S. trademark register, registration number 8319194, in international class 025 for graphic t-shirts. Plaintiff began using the Mark in commerce on June 27th, 2025. Plaintiff's Mark was registered with significance as a term of art in the the sports apparel industry and as used in connection with graphic t-shirts that relate to basketball championships and the city of Oklahoma City.

25. After Plaintiff began using his CHAMP CITY Mark in commerce and filed for registration of the Mark, Defendant WIF began manufacturing, marketing, distributing and selling their WIF Shirt which prominently featured the mark CHAMP CITY which is spurious and identical to Plaintiff's CHAMP CITY Mark and is likely to cause confusion, mistake or deceive. WIF's mark is identical in that, among other reasons, Plaintiff's registration is for the mark CHAMP CITY without claim to any particular font, style, size or color. WIF's CHAMP CITY mark is spurious and not genuine because, among other reasons, Plaintiff has never authorized WIF to use its registered CHAMP CITY mark and because WIF's mark is used in the identical context and with the same significance as Plaintiff's Mark was registered, namely celebrating the city of Oklahoma City and the Oklahoma City Thunder NBA basketball team and its 2025, and potential future, NBA championships. WIF's

CHAMP CITY mark is likely to cause confusion, mistake or to deceive consumers as to the mark's source or sponsorship because WIF has applied its counterfeit CHAMP CITY mark on the exact same goods as Plaintiff's CHAMP CITY Mark is registered for, namely graphic t-shirts, and in the exact same context, to the same customer base and through the same channels. Accordingly, WIF's CHAMP CITY mark is a counterfeit of Plaintiff's CHAMP CITY Mark.

26. WIF, without Plaintiff's consent, offered for sale, sold, distributed and advertised their WIF Shirt which prominently displayed the counterfeit CHAMP CITY mark and upon information and belief continues to do so. WIF has also applied the counterfeit CHAMP CITY mark to advertisements used in commerce in connection with the offering for sale, sale, distribution and advertising of the WIF Shirt. Each is likely to cause confusion, mistake or to deceive the consumer. Accordingly, WIF has infringed upon, and counterfeited, Plaintiff's CHAMP CITY Mark in violation of 15 U.S.C. §§ 1114(1)(a) & (b) and § 1116(d).

27. WIF's infringement and use of the counterfeit CHAMP CITY mark was both intentional and wilful in that WIF had actual and/or constructive knowledge, or should have had actual or constructive knowledge, that Plaintiff owned the CHAMP CITY Mark and that their use of the counterfeit mark was infringing as evidenced by WIF's expertise in trademark licensing and extensive knowledge of how, and the requirement, to research registered trademarks as well as WIF's continued offering for sale, sale, distribution and advertising of the infringing WIF Shirt with the counterfeit CHAMP CITY mark after Plaintiff sent a cease and desist notice on February 12th, 2026. Yet, despite this actual and/or constructive knowledge, WIF continued, and upon information and belief continues, to promote, distribute and sell the WIF Shirt. Accordingly, Plaintiff is entitled to WIF's profits from the sale and distribution of the

WIF Shirt, damages, costs and reasonable attorney fees associated with this action in accordance with 15 U.S.C. § 1117(a) as well as treble the amount of WIF's profits from the intentional sale and distribution of the WIF Shirt in accordance with 15 U.S.C. § 1117(b)(1). Additionally, at any time before a final judgment is rendered by the trial court Plaintiff may elect to recover, instead of profits and damages, an award of statutory damages of not less than $1,000 or more than $200,000, or not more than $2,000,000 if WIF's use of the counterfeit CHAMP CITY mark are found to be wilful in accordance with 15 U.S.C. §§ 1117(c)(1) & (2).

28. Defendant DSG, without Plaintiff's consent, has offered for sale, sold and advertised the WIF Shirt and upon information and belief continues to do so. DSG has also applied the counterfeit CHAMP CITY mark to advertisements used in commerce in connection with the offering for sale, sale and advertising of the WIF Shirt. Each are likely to cause confusion, mistake or to deceive the consumer. Accordingly, DSG has infringed upon, and counterfeited, Plaintiff's CHAMP CITY Mark in violation of 15 U.S.C. § 1114(1)(a) & (b) and § 1116(d).

29. DSG's infringement and use of the counterfeit CHAMP CITY mark was both intentional and wilful in that DSG had actual and/or constructive knowledge, or should have had actual or constructive knowledge, that Plaintiff owned the CHAMP CITY Mark and that their use of the counterfeit mark was infringing as evidenced by DSG's expertise in trademark licensing and extensive knowledge of how, and the requirement, to research registered trademarks as well as DSG's continued offering for sale, sale and advertising of the infringing WIF Shirt with the counterfeit CHAMP CITY mark after Plaintiff sent numerous cease and desist notices beginning February 13th, 2026. Yet, despite this actual and/or constructive knowledge, DSG continued, and upon information and belief continues, to promote and sell

the WIF Shirt. Accordingly, Plaintiff is entitled to DSG's profits from the sale and distribution of the WIF Shirt, damages and treble damages and costs and reasonable attorney fees associated with this action in accordance with 15 U.S.C. § 1117(a) as well as treble the amount of DSG's profits from the intentional sale and distribution of the WIF Shirt in accordance with 15 U.S.C. § 1117(b)(1). Additionally, at any time before a final judgment is rendered by the trial court, Plaintiff may elect to recover, instead of profits and damages, an award of statutory damages of not less than $1,000 or more than $200,000, or not more than $2,000,000 if WIF's use of the counterfeit CHAMP CITY mark are found to be wilful in accordance with 15 U.S.C. §§ 1117(c)(1) & (2).

30. Plaintiff has been damaged by WIF and DSG's infringement and offering for sale, sale, distribution and advertising of the WIF Shirt which uses a counterfeit CHAMP CITY mark in the form of loss of sales, loss of goodwill, consumer confusion and loss of reputation among other things. WIF and DSG have also been unjustly enriched by these unlawful acts.

**SECOND CAUSE OF ACTION**

**DECEPTIVE TRADE PRACTICES IN VIOLATION OF THE OKLAHOMA DECEPTIVE TRADE PRACTICES ACT § 78-53**

31. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs above as though fully set forth herein.

32. WIF used a counterfeit CHAMP CITY mark on the WIF Shirt in commerce and without the consent of Plaintiff, who owns the Mark CHAMP CITY. The counterfeit mark used by WIF on the WIF Shirt is false and highly likely to mislead a consumer to believe that Plaintiff approved of or sponsored the WIF Shirt and use of his CHAMP CITY Mark and/or that the true origin of the WIF Shirt is from Plaintiff and his brand CHAMP CITY. Consumers are

therefore confused, deceived and/or mistaken about the actual source or approval of the WIF Shirt. DSG sold the WIF Shirt which used the counterfeit CHAMP CITY mark.

33. WIF and DSG knew that they did not have consent to use the CHAMP CITY Mark in that they were aware that Plaintiff registered the CHAMP CITY Mark prior to WIF manufacturing, offering for sale, advertising, selling and distributing the WIF Shirt. Further, WIF and DSG received cease and desist notices from Plaintiff regarding their use of the counterfeit mark on or around February 12th, 2026, yet continued to manufacture, offer for sale, advertise, sell and distribute the WIF Shirt.

34. WIF and DSG's acts and omissions were false representations of the source, sponsorship, approval, certification, affiliation, connection and association with the CHAMP CITY Mark and Champ City brand. These false representations were intended to, and did, injure Plaintiff and the Champ City brand and/or substantially lessened competition with Plaintiff and the Champ City brand.

35. Accordingly, WIF and DSG have engaged in deceptive trade practices in violation of 78 OK Stat § 53(2)( & (3) and therefore Plaintiff is entitled to actual damages pursuant to 78 OK Stat § 54(A) and, because these practices were wilful, reasonable attorney fees pursuant to 78 OK Stat § 54(A). Further, because these claims arise from the statutory and civil - not contractual - obligation of WIF and DSG to Plaintiff, and because WIF and DSG have acted intentionally and with malice toward Plaintiff, Plaintiff is entitled to uncapped punitive damages pursuant to 23 OK Stat § 9.1(A) & (D).

## VI. RELIEF SOUGHT

WHEREFORE, Plaintiff requests a judgment against each Defendant as follows:

1. ENJOINING Defendants from further infringement and counterfeit of the Mark;

2. AWARDING Plaintiff the profits of each Defendant from the sale and distribution of the WIF Shirt, treble damages, costs and reasonable attorney fees or, if Plaintiff elects, statutory damages up to $2,000,000 and punitive damages; and
3. AWARDING Plaintiff any further relief which this Court may find just, proper and reasonable.

Dated: July 13th, 2026
Edmond, OK

Respectfully Submitted,

Plaintiff pro se
1125 NW 199th St.
Edmond, OK 73012
keithclingman@gmail.com
646-881-8777

PLAINTIFF'S CERTIFICATIONS AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11. I agree to notify the Clerk's office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's office may result in the dismissal of my case.

July 13th, 2026

Leonard K. Clingman