FILED

OCT 20 2026

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY ______, DEPUTY

**UNITED STATE DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

Index: 5:26-cv-01840

LEONARD K. CLINGMAN,
(Plaintiff),

v.

WHERE I'M FROM APPAREL, LLC, *et al.*,
(Defendants).

**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFS. MOTION TO DISMISS**

Plaintiff pro se, Leonard K. Clingman, submits the following brief in opposition to defendants', Where I'm From Apparel, LLC ("WIFA") and Dick's Sporting Goods, Inc. ("DSG") (collectively, "Defendants"), motion to dismiss:

## INTRODUCTION

In this trademark action where the only thing "not Oklahoma" is the residences of Defendants, Defendants challenge this Court's personal jurisdiction pursuant to FRCP 12(b)(2).

Plaintiff created his trademark, CHAMP CITY, specifically to celebrate the city of Oklahoma City after the Oklahoma City Thunder's 2025 NBA Championship. Plaintiff is a resident of Oklahoma and was when he created and registered the trademark. Defendants then created a highly-localized-to-Oklahoma counterfeit product intended specifically for an Oklahoma audience. Defendants marketed, advertised and sold that product primarily into and within Oklahoma. Yet, now, after intentionally exploiting the state of Oklahoma, and injuring an Oklahoma resident, Defendants seek to avoid availing themselves to the law and courts in Oklahoma. They can't have it both ways.

Notably, also, is that Defendants have not provided any affidavit, or other probative evidence, in support of their brief. Because Plaintiffs allegations are not controverted by affidavit, those that are well-pleaded must be accepted as true. Plaintiff's allegations in the complaint, and supporting exhibits, accepted as true demonstrate specific jurisdiction over each Defendant. Therefore, Defendants' motion must be denied.

## ARGUMENT

### I. Plaintiff's opposition and concurrent cross-motion for limited jurisdictional discovery.

As Plaintiff explains below, he has made a prima facie case of personal jurisdiction in his complaint and, accordingly, this Court's analysis should respectfully stop there and Defendants' motion should be denied. Should this Court find that Plaintiff has not made a prima facie case through his complaint, or that it lacks sufficient facts and proof to exercise personal jurisdiction over Defendants, Plaintiff, pursuant to this Court's Local Civil Rule 7.1(c), concurrently and provisionally submits a cross motion for limited jurisdictional discovery.

Moreover, Defendants have not filed the required disclosure statements pursuant to FRCP Rule 7.1 and Local Civil Rule 7.1.1, which could include information relevant to this Court's jurisdiction.

### II. Plaintiff's allegations regarding personal jurisdiction are uncontroverted by affidavit and therefore must be taken as true.

A plaintiff bears the burden of establishing personal jurisdiction. [see *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069-70 (10th Cir. 2008)] That burden can be met via a prima facie showing in the complaint [Id.] and all well-pleaded

jurisdictional allegations in the complaint that are not controverted by a defendant's affidavit must be taken as true. [see *Shrader v. Biddinger*, 633 F.3d 1248 (10th Cir. 2011)]

Here, Defendants have provided no affidavit, or any other probative evidence, to support their arguments and, accordingly, the complaint's allegations regarding personal jurisdiction must be taken as true. [*Shrader*]

## III. Taken as true, the allegations in the complaint have established a prima facie case for specific jurisdiction over Defendants and Defendants' motion must be dismissed.

Plaintiff's complaint is replete with well-pleaded allegations and exhibits which demonstrate this Court's personal jurisdiction over Defendants. [Complaint, Doc. 1, ¶ 2, 5, 7-12, 14-18, 21, Exhibits A-E] Those allegations include: that Defendants conduct a substantial amount of business in the district; explanations and depictions of the trademark's and infringing product's specific and intentional Oklahoma design and relevance; that that infringing product was primarily advertised and sold by Defendants to residents of, and within, Oklahoma; that WIFA manufactured the Infringing Shirt, which was designed for and primarily relevant to Oklahomans, and sold it to DSG who then sold it in its stores[1]; and that Plaintiff is a resident of Oklahoma. These allegations must be accepted as true. [*Shrader*] Accepted as true, these allegations alone are sufficient to demonstrate specific jurisdiction over Defendants.

"Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b)

---

[1] Notably, DSG has eight retail stores in Oklahoma. See https://stores.dickssportinggoods.com/ok/. (showing DSG stores in Broken Arrow, Lawton, Moore, three stores in Oklahoma City and two stores in Tulsa)

whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.' *Burger King,* 471 U.S. at 476-77, 105 S.Ct. 2174; *Shrader v. Biddinger,* 633 F.3d 1235, 1239-40 (10th Cir. 2011) (quotations omitted). The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have 'purposefully directed its activities at residents of the forum state,' and (ii) that 'the plaintiff's injuries must arise out of [the] defendant's forum-related activities.' *Shrader,* 633 F.3d at 1239 (quotations omitted); *see also Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. The purpose of the purposeful direction requirement is to "ensure[s] that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person." [*Burger King*] "[W]here the defendant deliberately has engaged in significant activities within a State . . . he manifestly has availed himself of the privilege of conducting business there. . .Accordingly, '[i]t is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum.' [Id.]

Purposeful direction considers "three frameworks for determining whether an out-of-state defendant's activities satisfy the purposeful direction requirement: (1) continuing relationships with forum state residents ("continuing relationships"); (2) deliberate exploitation of the forum state market ("market exploitation"); and (3) harmful effects in the forum state ("harmful effects")." [*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co. v. Washington,*

S.Ct., (1945); see also *Old Republic Ins. Co. v. Continental Motors, Inc.*, Court of Appeals, 10th Circuit (2017)]

**A. Defendants have purposefully directed their activities at residents of Oklahoma through deliberate exploitation of the state market.**

"Continuous and deliberate exploitation of the forum state market can satisfy the minimum contacts standard for specific jurisdiction over an out-of-state defendant. . ." [*Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)]

In *Old Republic*, the Tenth Circuit explored the market exploitation theory of specific jurisdiction, relying on *uBID, Inc. v. GoDaddy Group, Inc.*, (7th Cir. 2010). In *uBID*, the Seventh Circuit, relying on the Supreme Court's findings in *Keeton v. Hustler Magazine, Inc.*, S.Ct. (1984), found that Arizona-based GoDaddy, by virtue of being a nationally-relevant brand who advertised its brand and services across the country, including the state of Illinois which was the subject forum in *uBID*, and who had a significant customer base in Illinois, was subject to personal jurisdiction in Illinois due to its "extensive national advertising and. . .significant national sales" that reached Illinois customers, was a "straightforward case for sufficient minimum contacts". [see *uBID*] In finding so, that court noted, and discredited, GoDaddy's attempt "to distance itself from Illinois by casting the Illinois market as simply one among many, a place of no particular interest to it". Notably, also, is that the Seventh Circuit found in *uBID*, again relying on *Keeton*, that it was not necessary for purposes of specific jurisdiction that GoDaddy had targeted Illinois customers in its advertising, but "[i]nstead, what mattered was that

[GoDaddy] had purposefully directed its business activities toward [Illinois] just as it had toward all other states." [paraphrasing *uBID*]

Here, Defendants do just as GoDaddy attempted to do; they each rely on the nationally-prominent nature of their businesses and their out-of-state residences in an attempt to distance themselves from jurisdiction in Oklahoma while at the same time exploiting the Oklahoma market in ways well beyond even those of GoDaddy in *uBid*. In other words, Defendants want the benefit of exploiting Oklahoma without the responsibility of answering for their acts in Oklahoma. However, "Specific jurisdiction . . . is premised on something of a quid pro quo: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." [*Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)]

**1. DSG's extensive national advertising and significant national sales.**

As stated in the complaint, and acknowledged by DSG in its brief, "DSG is the largest sporting goods retailer in the U.S." [Complaint, Doc. 1, ¶ 20; Defs. Brief, Pg. 3] DSG's yearly revenue in 2025 was $17.2billion[2]. DSG has 888 U.S. brick and mortar stores[3] and also sells its products nationwide through its publicly accessible website, dickssportingsgoods.com. DSG frequently creates and deploys national television

---

2 https://www.sec.gov/Archives/edgar/data/1089063/000108906326000007/dks-20260131.htm?utm_source=chatgpt.com#i1e4148a89ba4489ebedb5c73b594f8db_235, Pg. 56

3 https://www.sec.gov/Archives/edgar/data/1089063/000108906326000007/dks-20260131.htm?utm_source=chatgpt.com; Pg. 28

advertising campaigns within broadcasts of some of the biggest sports moments in the county, such as the opening game of the 2026 FIFA World Cup[4] and the NCAA's March Madness basketball tournament.[5] This is on top of DSG's ongoing ad campaigns and commercials which are "broadcast across digital, social and streaming platforms, including Amazon Prime, Disney+, Hulu, Max, Netflix, YouTube Auction and YouTube Select."[6] These commercials are packed full of some of the world's most prominent and popular athletes and celebrities such as Tom Brady, Kevin Durant, Lionel Messi, Shai Gilgeous-Alexander and Jayson Tatum.[7] DSG has programmed television, and other, U.S. ads around the Olympic Games since at least 2016[8] and in 2024 DSG began a four-year partnership with the Olympic games and Team U.S.A. with DSG becoming the U.S.

---

4 https://investors.dicks.com/news/press-releases/news-details/2026/DICKS-and-adidas-Celebrate-FIFA-World-Cup-2026-with-Star-Studded-Where-It-All-Kicks-Off-Campaign/default.aspx. "***Where It All Kicks Off*** **launched today on social and will make its broadcast debut on June 11 as the first FIFA World Cup 2026™ match kicks off.**"

5 https://www.sportsbusinessjournal.com/Daily/Issues/2023/03/10/Marketing-and-Sponsorship/dicks-sporting-goods-march-madness/

6 https://www.sportsbusinessjournal.com/Articles/2025/03/20/dicks-sporting-goods-partners-with-ishowspeed-brady-and-durant-for-footwear-ad/

7 https://www.marketingbrew.com/stories/2026/03/25/dicks-nike-basketball-march-madness-ads, https://investors.dicks.com/news/press-releases/news-details/2026/DICKS-and-adidas-Celebrate-FIFA-World-Cup-2026-with-Star-Studded-Where-It-All-Kicks-Off-Campaign/default.aspx, https://www.sportsbusinessjournal.com/Daily/Issues/2023/03/10/Marketing-and-Sponsorship/dicks-sporting-goods-march-madness/, https://www.sportsbusinessjournal.com/Articles/2025/03/20/dicks-sporting-goods-partners-with-ishowspeed-brady-and-durant-for-footwear-ad/

8 https://www.prnewswire.com/news-releases/dicks-sporting-goods-debuts-new-campaign-featuring-team-usa-contenders-currently-employed-in-its-stores-300230917.html

Official Sporting Goods Retail Provider for the Olympics and an Official Supporter of Team U.S.A.[9] DSG's national ad campaigns are so widespread, and highly-regarded, that the campaigns themselves receive trade press coverage.[10] All of this marketing has been successful and has reached Oklahoma customers, who have flocked to DSG's eight Oklahoma stores[11] and the DSG website to spend many millions of dollars each year. [see *uBID*[12]] However, DSG's minimum contacts with, and exploitation of, the Oklahoma market go even farther than just their national efforts.

**2. DSG's extensive presence and marketing in Oklahoma.**

In examining DSG's Oklahoma-specific contacts in the context of personal jurisdiction in Oklahoma, it must first be noted that DSG has previously accepted personal jurisdiction over it by the federal courts in this state[13] and has itself filed claims

9 https://www.prnewswire.com/news-releases/dicks-sporting-goods-announces-partnership-with-team-usa-and-the-la28-olympic-and-paralympic-games-302204143.html

10 https://www.adweek.com/creativity/dicks-sporting-goods-support-local-athletes-olympic-tie-in-ad/, https://adage.com/article/marketing-news-strategy/dicks-sporting-goods-biggest-ad-campaign-ncaa-sponsorship/2478861/

11 https://stores.dickssportinggoods.com/ok/

12 "All of this marketing has successfully reached Illinois consumers, who have flocked to GoDaddy by the hundreds of thousands and have sent many millions of dollars to the company each year. These contacts establish GoDaddy's minimum contacts with the state for claims sufficiently related to those contacts."

13 See *Smith v. Barnett Outdoors, LLC and Dick's Sporting Goods, Inc.*, 4:15-cv-00404, N.D. OK 2015 (DSG did not contest personal jurisdiction and actively participated); *Harris et al. v. Dick's Sporting Goods, Inc*, 4:2015cv00511, N.D. OK 2015 (DSG did not contest personal jurisdiction);

in the federal courts in this state[14], meaning DSG has willingly availed itself to the laws of this state and has sought relief from district courts in this state.

Further, DSG has been registered with the Oklahoma Secretary of State since the year 2000[15]. DSG opened its first brick and mortar store in Oklahoma in 2011[16] and currently has eight large-footprint brick and mortar stores across the state[17]. Although it's unclear for exactly how long, DSG has been making online sales through its website at www.dickssportinggoods.com to Oklahoma residents for, presumably, decades. DSG has a registered agent in the state of Oklahoma[18]. By virtue of their eight in-state locations, DSG banks, and pays significant taxes, in Oklahoma, owns, or leases, a significant amount of property in Oklahoma and has what is likely thousands of part- and full-time employees in Oklahoma.

DSG also significantly markets and advertises itself to Oklahomans and within the state, so much so that DSG shot and aired a television commercial in 2013 entitled "Thank you Oklahoma City", intended to thank the city for its patronage of DSG's stores.[19] Oklahoma's largest local media outlets frequently cover the opening of DSG stores in the state of Oklahoma[20] which are media stories presumably solicited by an

---

[14] See *Three RP Limited Partnership v. Dick's Sporting Goods, Inc.*, 6:18-cv-00003, N.D. OK 2018 (DSG filed counterclaim and did not contest personal jurisdiction)
[15] https://www.sos.ok.gov/corp/corpInformation.aspx?id=2300653223
[16] https://retailrestaurantfb.com/dick-s-sporting-goods-enters-oklahoma-with-3-new-stores/
[17] https://stores.dickssportinggoods.com/ok/
[18] https://www.sos.ok.gov/corp/corpInformation.aspx?id=2300653223
[19] https://www.youtube.com/watch?v=ro2-TZjvQYI
[20] https://www.youtube.com/watch?v=D-Jy6CaHRlo; https://www.youtube.com/watch?v=EKv2_fbFrrA

internal or external DSG public relations team[21]. DSG puts on various community events in Oklahoma, and in partnership with Oklahoma authorities, including their annual "Shop with a Cop" event in collaboration with the Oklahoma City Police Department which has taken place the last four years[22] and signings with Oklahoma City Thunder players[23]. DSG has donated at least hundreds-of-thousands of dollars to organizations and teams within the state - including Oklahoma City Public Schools - in recent years through its Dick's Sporting Goods Foundation.[24] Notably, the Dick's Sporting Goods Foundation has been registered in the state of Oklahoma since 2014.[25] In 2016, DSG partnered with Oklahoman and country music superstar Carrie Underwood with Underwood returning to her hometown of Checotah, Oklahoma, to, alongside DSG, make a $100,000.00 donation to the Checotah School District Girls Athletic Programs.[26]

Accordingly, DSG unquestionably has continuously and deliberately exploited the Oklahoma market and therefore has sufficient minimum contacts with the Oklahoma market. [*uBID*]

---

[21] Many national or international companies like DSG frequently hire public relations teams local to the state they are pitching, therefore it is highly possible that DSG even hired an Oklahoma public relations firm to pitch these stories

[22] https://www.youtube.com/watch?v=Q9lwF1ytcmE

[23] https://www.youtube.com/watch?v=-OYEakIyWMM

[24] https://www.prnewswire.com/news-releases/calia-by-carrie-underwood-in-partnership-with-the-dicks-sporting-goods-foundation-to-donate-500000-in-sports-matter-grants-to-girls-youth-sports-teams-across-the-country-300284227.html; https://kfor.com/news/local/dicks-sporting-goods-donates-hefty-check-to-oklahoma-city-public-schools/; https://www.youtube.com/watch?v=OdivZBfa_lw;

[25] https://www.sos.ok.gov/corp/corpInformation.aspx?id=4312447947

[26] https://www.carrieunderwoodofficial.com/calia-by-carrie-in-partnership-with-the-dicks-sporting-goods-foundation-to-donate-500000-in-sports-matter-grants-to-girls-youth-sports-teams-across-the-country/

**3. DSG's contacts with Oklahoma well exceed those found to be purposeful direction toward, and exploitation of, Illinois in *uBID v. GoDaddy.***

In *uBID,* GoDaddy's national marketing and advertising campaigns and national sales which included those in Illinois were, alone, sufficient for the court to find that GoDaddy had purposefully directed its activities toward, and exploited the market of, Illinois. "All of this marketing has successfully reached Illinois consumers, who have flocked to GoDaddy by the hundreds of thousands and have sent many millions of dollars to the company each year. These contacts establish GoDaddy's minimum contacts with the state for claims sufficiently related to those contacts." [see *uBID*] Notably, that court found so even though there was "no evidence that GoDaddy specifically targets Illinois customers in its advertising." [Id.]

Here, DSG's reach in, and continued and deliberate exploitation of, Oklahoma is more extensive compared to that of GoDaddy in *uBID*. GoDaddy's yearly annual revenue at the time of the *uBID* decision was only $4.9billion[27], compared to DSG's $17.2billion[28] which is nearly four times larger. GoDaddy had no physical in-state stores whereas DSG has eight stores in Oklahoma. Whereas GoDaddy did not market or advertise directly toward Illinois, DSG continues to routinely and significantly market and advertise directly toward and within Oklahoma.

27 https://www.sec.gov/Archives/edgar/data/1609711/000160971126000010/gddy-20251231.htm?utm_source=chatgpt.com, Pg. 80

28 https://www.sec.gov/Archives/edgar/data/1089063/000108906326000007/dks-20260131.htm?utm_source=chatgpt.com#i1e4148a89ba4489ebedb5c73b594f8db_235, Pg. 56

**4. WIFA's continuous and deliberate exploitation of the Oklahoma market.**

Defendant WIFA also continuously and deliberately exploits the Oklahoma market. WIFA's own ads[29] even claim that they are "local to [Oklahoma]". [see Ex. A] Notably, this ad was facially targeted directly at Oklahomans. [Id.] WIFA designs, manufactures, markets, distributes and sells locally-relevant apparel[30], including an entire product line focused on the state of Oklahoma[31]. [see Ex. B] That product line, including the counterfeit t-shirt which is the subject of this action, includes products that are designed to appeal specifically to Oklahomans and uses images of and references to the state of Oklahoma and its various cities. Oklahomans then purchase these shirts to show pride in their state and city. For example, the t-shirt which is the subject of this action features the copy "Oklahoma City" and "OKC" distinctly across the front of the shirt while also incorporating an image of the OKC skyline's most well-known feature, Devon Tower. [see Complaint, Doc. 1, Ex. B] Although the shirt references the Oklahoma City

---

[29] This ad shows up as a Google "sponsored result". A sponsored result on Google is a paid ad. See https://blog.google/products/ads-commerce/google-search-sponsored-results-label/.

[30] https://whereimfrom.com/pages/about-us; WIFA "create[s] comfortable apparel that celebrates where you're from" and "believe[s] that where you're from is a vital part of who you are. From city skylines to regional icons, each piece tells a story, your story. Our mission is to help people express that pride through high-quality, story-driven apparel. Whether you're repping your city, your college, or your favorite team, we're here to help you wear your identity with pride."

[31] https://www.google.com/search?q=where+i%27m+from+apparel+oklahoma&sca_esv=16b5fe11bef6c27b&sxsrf=APpeQnv_XzSSey2FGJv56BZdXX776AHCuQ:1790045812975&source=univ&udm=28&ved=1t:6869&ictx=111&biw=1710&bih=952&dpr=2

Thunder, the intent goes well beyond that and celebrates the city and the state of Oklahoma, exactly as WIFA's mission states[32].

WIFA's website shows that WIFA products are "proudly carried at select retailers across the country"[33] that include Defendant DSG, Rally House, Target and DSW. [see Ex. C] Beyond DSG's previously-stated eight Oklahoma stores, Rally House has 13 Oklahoma stores[34], Target has 15 Oklahoma stores[35] and DSW has three Oklahoma stores[36]. WIFA and these retailers also advertise WIFA's Oklahoma-focused product line directly toward Oklahomans.[37] [see Ex. D] Although WIFA does not appear to sell its Oklahoma-focused product line through its own website, and only uses the retailers mentioned above, it would be unreasonable to believe that WIFA did not intend, and expect, that its Oklahoma-focused products would be sold directly and primarily to Oklahomans and within Oklahoma.

Accordingly, WIFA has purposefully directed its activities toward, and continuously and deliberately exploited, Oklahoma and the Oklahoma market and therefore has sufficient minimum contacts within the state and has purposefully directed its activities within the state. [*uBID*]

---

[32] See footnote 30
[33] www.whereimfrom.com
[34] https://www.rallyhouse.com/stores?srsltid=AU7gw4XE4DCxxekt6bAQpq8wiYi8NI6FKe52f6fh0_kwf-fvfHYlo3EA
[35] https://www.target.com/store-locator/store-directory/oklahoma
[36] https://stores.dsw.com/us/ok
[37] See footnote 29

**5. Plaintiff's injuries arise from Defendants Oklahoma-related activities.**

With the purposeful direction prong of the market exploitation theory under *Shrader* satisfied, the Court must now look at whether Plaintiff's injuries arise from Defendants' Oklahoma-related activities. [*Shrader*] Plaintiff's injuries arise from the counterfeit and infringement of his trademark by Defendants. The subject t-shirt which constitutes Defendants' counterfeit and infringement is undeniably Oklahoma-themed and was primarily marketed, advertised and sold to and within Oklahoma.

Accordingly, his injuries patently arise from Defendants' Oklahoma-related activities.

Notably, also, is that Defendants acts also satisfy the "harmful effects" theory of personal jurisdiction as where a state is the focal point of a business' act and the harmful effects of that act were felt in that state, personal jurisdiction over that business is proper in that state under the theory of "harmful effects". [see *Calder v. Jones*, 465 U.S. 783 (1984)[38] citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U. S. 286, 444 U. S. 297-298 (1980)] Here, Oklahoma is the focal point of a substantial part of Defendants' business, including the creation, marketing, advertising, distribution and sale of the infringing t-shirt. As Plaintiff is a resident of the state, and registered the trademark within the state, the effects of Defendants' counterfeit and infringement are felt directly in the state.

---

[38] "In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California."

## IV. Conclusion.

Therefore, this Court has specific jurisdiction over Defendants and their motion must be denied.

Respectfully,

/s/ Leonard K. Clingman

Leonard K. Clingman
Plaintiff pro se
1125 NW 199th St.
Edmond, OK 73012
keithclingman@gmail.com
646-881-8777

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of October, 2026, I mailed this brief, declaration in support and exhibits to the Clerk of the Court, Western District of Oklahoma via USPS First Class Mail.

I also certify that on this 13th day of October, 2026, I emailed this brief, declaration in support and exhibits to Defendants via counsel at zach.oubre@mcafeetaft.com.

/s/ Leonard K. Clingman

Leonard K. Clingman
Plaintiff pro se
1125 NW 199th St.
Edmond, OK 73012
keithclingman@gmail.com
646-881-8777